on this afternoon's docket is the case of People of the State of Illinois v. Michael Scott. We have Eldad Malamuth, and we have Mr. John Gleeson. Mr. Malamuth, you can proceed when you're prepared to. Thank you. Good afternoon. May it please the court. My name is Eldad Malamuth, and I'm here today from the Illinois Attorney General's Office on behalf of the appellants to the People of the State of Illinois. The people asked this court to reverse the judgments of the circuit courts in the two consolidated cases below, in which the circuit court granted defendants motions to suppress evidence and statements. In one of the cases, the defendant was charged with the transportation of unstamped cigarettes, and in the other, with driving under the influence of a drug, specifically marijuana. Both charges resulted from a traffic stop made in November 2009 at approximately 3 in the morning in Effingham County. In each case, the circuit court granted defendants motions to suppress, finding that the police officer did not have probable cause to initiate the traffic stop. The officer had testified that he had observed the vehicle travel over the fault line on the interstate and on an exit ramp. The circuit court reasoned that there was no testimony that the defendant's car had endangered another, and that therefore there was no probable cause to believe that the defendant had engaged in improperly usage. This court should reverse because the circuit court's judgment was based on two fundamental errors of the law. First, the court articulated the wrong legal standards. The court required a probable cause, when instead reasonable suspicion was what was required. Second, the court held that improper lane usage requires a driver to endanger another, but the Illinois Supreme Court in Smith has made clear that that's not the case. Notably, the defendant does not contest that these legal determinations were made or that they were, in fact, error. Instead, he argues that the court made a factual finding that he never crossed the fault line. But the court made no such finding, certainly not a finding that the officer did not mistakenly believe that he crossed the line. And in any event, any such finding would be fatally affected by the legal errors. Turning first to the threshold matter of the correct legal standards, the court required a police officer to have a probable cause to make a traffic stop. But the law is clear that all the officer needed was reasonable suspicion. A traffic stop is analogous to what is often called a tarry stop for reconvestigating stuff. A probable cause requires that before the arrest, there be facts sufficient to lead a reasonably cautious person to believe that he or she has committed a crime. For reasonable suspicion, all that is required is that there be articulable facts that, taken with the rational inferences they're from, reasonably warrant a stop. Reasonable suspicion is a less demanding standard than probable cause. Probable cause, of course, itself is a less demanding standard than the ponderance of the evidence. In any event, the circuit court applied those logical standards. Now, second to the central legal error in this case, the circuit court found that there was no probable cause because the officers did not testify that anyone was put to jeopardy or that the defendant's vehicle almost collided with them. But in People v. Smith, the Illinois Supreme Court made clear that a driver who crosses a lane line commits improper lane usage, full stop. There does not need to be any endangerment of another. Indeed, in Smith, the Illinois Supreme Court found that as soon as a car crosses a line, there's probable cause to arrest the driver for violating the vehicle. So the statute establishes two requirements for lane usage. One, driving within one lane is nearly practical. And two, not moving from that lane until it can be done so safely. Violating either constitutes in and of itself a violation of the statute. Now, again, the defendant does not appear to contest that the circuit court made these determinations or that they are incorrect. Instead, what he does is argue that the court should respect the factual finding that he never crossed a lane line. But no such factual finding was made. In Remington's decision, the court first looked to whether there could be a search after the initial stop was made. And the court determined, harmfully, that under Caballas, the narcotics canine dog could be brought to any traffic stop. And that once the dog alerted, a further search was proper. So the only question was whether there was justification for the initial stop. In turning to that question, the court first articulated its improper definition of the legal lane usage, saying that there needed to be both going over the line and endangerment. And then the court noted that there was no testimony of the lack of endangerment. And from that, the court found that there was a credibility problem with the officer's conclusion that there was probable cause or reasonable suspicion, should have been, but probable cause to pull the car over. Now, later on, the court went on to summarize the defendant's testimony that he did not cross the line. But the court makes no factual finding about that. Indeed, there are other places the court comments on the testimony. But in this case, in this specific point, the court made no such comment. Which isn't surprising, because at that point the court, to me at least, under its reasoning, has already found that there was a problem because there had been no testimony about the endangerment. Moreover, even if there was no testimony, the legal errors, the court, it's notable, specifically says that the circuit court judge gives the improper definition of improper lane usage, says there's no testimony about the endangerment, and then says, because of that, I quote, there was an issue of credibility initially with that giving respect to the officer. It's clear what the court's doing is making a legal error with respect to the definition of improper lane usage. And based on that finding, if there's no reasonable suspicion or probable cause, but properly applied, it's clear that there was reasonable suspicion before the traffic stop. And so the people asked this court to reverse the judgments of the circuit courts. And unless there are other questions, we would ask the circuit court, this court, to reverse the judgment of the circuit court that granted the motion to suppress. Thank you, Mr. Balmes. You'll have an opportunity for rebuttal. Mr. Gleason. Thank you, Your Honor. May it please the Court and Counsel. I'm John Gleason, representing the defendant, L.E. Michael Scott. Certainly, the key to deciding this appeal is found in the judge's remarks at the close of the suppression hearing. There, we find whether the judge based her suppression order on judicial ignorance of the Fourth Amendment and the traffic statutes, or whether it was based on a simple credibility determination. The sole ground upon which she granted the motion was lack of probable cause for the stop. Is that correct? At the very end of her remarks, she said the following, and I brought it just so the Court can be sure, she said at the end of her remarks, so after considering the testimony, judging the credibility of the witnesses, the Court finds that there was no probable cause for the stop initially, and the defendant's motions to suppress are granted. Now, sure, she said probable cause instead of reasonable doubt, reasonable suspicion. It's an easy mistake to make. I just made a mistake in the terminology right there. And I note that nobody corrected her terminology. I mean, the State didn't say anything, the defense attorney didn't say anything. People sometimes use the incorrect terminology, and they suggest that that's what happened here. Now, if you look at her remarks as a whole, throughout her remarks, she commented on the credibility of Deputy Daters, the one who tailed and stopped Michael Scott's car. The judge said there is an issue of credibility initially with respect to Deputy Daters, and then at two or three points throughout her remarks, she describes different parts of Deputy Daters' testimony as somewhat suspect or troubling. And I would suggest that throughout her remarks, she seems skeptical of Daters' testimony. Now, certainly someone can point out that the judge did not come right out and say, you know, I don't believe Deputy Daters. I think he fabricated testimony. I believe the guy with the O.C.M. cigarettes said that. She did not say that. But as far as the probable cause issue, that would be the only way it could have been determined on credibility. She'd have to be saying, I believe the defendant when he says he didn't cross the line. Right? And I don't believe the officer who says he did cross the line. Yes. And as I say, she did not explicitly say that. But for goodness sake, Deputy Daters and his fellow deputies are probably on that court all the time testifying. And do we really require her? Does this court really require her to be so harsh in her findings? It's clear enough from the judge's remarks that the judge did not believe Deputy Daters. Now, it is true that she began her remarks by noting that Michael Scott's driving did not endanger anyone or anything. The judge did not say that endangering someone or something is an element of improper lane usage. She never said that you cannot commit improper lane usage unless you endanger someone or Clearly, if you read the definition of improper lane usage, there has been nothing provided by the state to show in any manner that someone was put in jeopardy because it does provide that the vehicle should not be moved from a lane until the movement can be made with safety. Close quote. So she said, when I look at this definition, the state didn't prove that anybody was unsafe. We read it differently. So if it's as clear as you say that this was about credibility, isn't it just as clear in that statement that she was reading the statute that it required some kind of unsafe movement? I certainly can understand that you read it that way, but I would suggest that she's focusing, talking about mainly the moving from one lane to another, which is what improper lane usage is all about and involves moving from one lane to another. I hope that I'm not reading too much into her remarks, but I think that she had the same thought that I had when I read the transcript of the Deputy Dater's testimony. This is Effingham County. They have I-57 up to Chicago and I-70 to St. Louis, etc. There are a lot of stops made where somebody is found with drugs, transporting drugs up to Chicago and whatnot. I think that her mentioning the fact that there was no dangerous driving here, no one was in danger, is just another indication that this incident was not some serious incident. It is the type of situation where the deputy had a hunch, perhaps a hope, that he would stop a car that had some shipment of drugs in it or whatnot. I think that's all that is really intended by that comment, that there was no one danger here, nothing danger here. And I do not think that we can jump to the conclusion that the judge does not understand improper lane usage. This is one of the most commonly written texts anywhere. If the judge created any confusion as to the reason for her ruling, I think she dispelled that confusion at the end of her remarks. I quoted earlier how she finished her remarks. So, after considering the testimony, judging the credibility of the witnesses, the Court finds that there was no probable cause for the stop of the defendant's motions to suppress or grant. As I say, it's easy to make a mistake like that. Nobody corrected her terminology. Nobody corrected anything that she said legally. Making these credibility determinations was part of the judge's fact-finding role in the suppression hearing. And it cannot be shown that her determinations were unreasonable or arbitrary. She goes into it at some length why she does not believe Deputy Davis. So I ask this Court to affirm the judgment. Thank you. Thank you, Mr. Gleason. Mr. Malamud, do you have rebuttal? Thank you, Your Honor. In this case, we cannot go by what the judge intended or what the judge meant or we cannot infer various reasons for why she might have said what she said. We can only go by the transcript. And what is clear is that she made two legal errors. She made the error with respect to probable cause versus reasonable suspicion. The counsel kind of notes that she might not have made that error repeatedly, but she clearly made that error. And there are no other points in the transcript that suggest that she was perhaps using him for a legal standard. And this one moment was a slip. But it's clear based on the arguments made to her and by what she said that she believed probable cause was a standard. Now, turning to improper lane usage, again, it's clear what she believes. She discusses the definition of improper lane usage and says that that definition provides both that the vehicle should not be moved from a lane until the movement can be made with safety. There is no testimony, testifying testimony here that he almost impacted both anything or almost anything. So it's clear from what she said that that was her belief. That was the circuit that the judges believed. And that's a mistake. Now, counsel suggested it might be harsh to require her to affirmatively state that she did not believe the officer. I would suggest that it's the reverse, that it would be, of course, harsh to believe that she didn't believe his testimony as opposed to believe that there might be some crossing the line, but that that was not a legal error, that the officer might have made a legal error with respect to probable cause, and that this problem has legal error. He made an incorrect determination with respect to probable cause. And it's also clear with respect to the, again, although the circuit judge uses language of credibility, she discusses it in terms of the legal determination about improper lane usage. So any factual finding, credibility determination is strictly tied to the legal errors. So unless there are further questions from the courts for these reasons as well, I would like to suggest that this is our court's decision. Thank you. Thank you, gentlemen, for your briefs and arguments. We'll take a matter under advisement.